FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ APR 1 2 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
SHINE DINGLE AND DWAYNE HICKS,

    Plaintiffs,

  - against -

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, NEW YORK CITY
POLICE OFFICER LT. JOSEPH BARONE and
POLICE OFFICERS JOHN DOE #1 through #10,
the names being fictitious and presently unknown, in their
individual and official capacities as employees of the
City of New York Police Department,

    Defendants.
---------------------------------------------------------- x

**MEMORANDUM & ORDER**

14 CV 7316 (RJD) (PK)

DEARIE, District Judge

## OVERVIEW

  Plaintiffs Shine Dingle and Dwayne Hicks bring numerous claims against the City of New York, the New York City Police Department, Lt. Joseph Barone, and John Doe Officers 1-10. Plaintiffs make claims of false arrest, illegal imprisonment, municipal liability, negligent hiring, negligent training and supervision, assault, battery, excessive force, malicious prosecution, improper conditions of confinement, deliberate indifference to medical needs, denial of a fair trial, negligence, and violations of the Fourth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution. Plaintiffs' claims arise out of circumstances surrounding a search of Mr. Hicks's apartment and related arrests for violation of New York Penal Law § 220.50(3), Criminally Using Drug Paraphernalia in the Second Degree.

  Defendants now move for summary judgment. The Court denies summary judgement on the claims of denial of the right to a fair trial due to fabrication of evidence, false arrest, and negligence. Defendants' motion is granted as to all remaining claims.

## BACKGROUND

On September 30, 2013, Judge Neil Firetog of The Supreme Court of the State of New York authorized a search warrant to search 390 Sutter Avenue, Apt. 5g, Mr. Hicks' apartment. The warrant was based on information from a confidential informant, which provided probable cause for believing that a 9 mm. semi-automatic pistol, ammunition, and records relating to residency, (constituting evidence of violations of state penal law), could be found there. The warrant authorized officers to search all rooms and storage areas, including safes, cabinets, desks, closets, etc., in which such items could be stored or concealed.

On the morning of October 2, members of the NYPD arrived at 390 Sutter Ave. to execute the search warrant. At approximately 6:00 AM, officers observed Mr. Hicks leaving the building; some report seeing him with Ms. Dingle as well, while others only recall seeing Mr. Hicks. Lichterman Decl., Ex. C ("Kaylish Dep.") at 79, Ex. E ("Arroyo Dep.") at 19, ECF No. 41. According to Mr. Hicks and Ms. Dingle, they exited the building together and made their way to his vehicle. Lichterman Decl., Ex. F ("Dingle Dep.") at 63-64, Ex. G ("Hicks Dep.") at 35. Moments later, Mr. Hicks walked to a nearby store to buy a soda for Ms. Dingle, while she waited in the car. Hicks Dep. at 37. Officers approached Mr. Hicks and told him to stop;[1] instead, he took off running and police were not able to catch him. After this encounter, the officers questioned Ms. Dingle, who was still in the car. One of the officers who spoke with Ms. Dingle was Lt. Joseph Barone. The parties dispute the details of police interaction with Ms. Dingle. Ms. Dingle only recalls telling the officers that she did not live at 390 Sutter Ave. Pl. 56.1 ¶ 15, ECF No. 45. Defendants report that she told them that she was Mr. Hicks' girlfriend and that she had

---

[1] It is disputed whether the officers announced themselves as police and drew their guns. Officers contend that they did announce themselves and did not draw their guns. Hicks reports that they did not announce themselves and did draw their guns, causing him to flee in fear for his life.

been in the apartment overnight. The parties do not dispute that Ms. Dingle was handcuffed, searched and detained. Id. at ¶ 16. Ms. Dingle also alleges that the officers searched the contents of her purse and phone, and that officers used threatening language when questioning her about Hicks. Id. at ¶ 17.

Concurrent with officers questioning Ms. Dingle, other officers executed the search warrant in the apartment. Though the warrant permitted a search of the whole apartment, the officers searched only the living room and Mr. Hicks' bedroom. Mr. Hicks' niece, Shakema Destin, was present in the apartment during the search. Lichterman Decl., Ex. J ("Destin Dep.") at 27-34. Ms. Destin was handcuffed and detained in the living room, facing away from the areas searched. Id. at 30. Though she could not see the search taking place, she could hear the conduct and the voices of the officers. Id. at 42-43. At one point during the search, Ms. Destin explained to the officers that there was an urn in the room and that the officers should be careful. Zenon Decl., Ex. 1 at 49, ECF No. 46. Mr. Hicks claims that when the NYPD searched his apartment they broke the urn, which had been in his bedroom, and that the officers walked through the ashes, leaving footprints in his father's remains. Ms. Destin also reports that she saw the aftermath of the search when the officers left, including: destruction of the urn, a turned mattress, clothes thrown about, CDs strewn on the floor, and drawers left open. Id. at 67. Defendants dispute her description. Specifically, Captain Sean Sharkey reports that when he realized the clock was an urn, he carefully placed it in a part of the room where it would not be damaged. Lichterman Decl., Ex. K ("Sharkey Dep.") at 51.

According to the arrest report, marijuana and drug paraphernalia were found in Mr. Hicks' bedroom. Hicks disputes this, and instead suggests that the marijuana was planted and used by the NYPD to justify his arrest. Mr. Hicks provides his own sworn testimony, along with

that of Ms. Dingle and his niece, Ms. Destin, to support his claim that evidence was planted. Further, Mr. Hicks offers specific reasons why he would not have kept contraband in the apartment: Hicks' brother (who was subject to weapons arrest while living there), Hicks' mother, (whose health issues and living situation were an object of concern for Hicks), and Hicks' contention that he was regularly subject to illegal searches and harassment by police. Pl. Opp'n. Mem. at 9. Anticipating such searches, and out of concern for the health and comfort of his mother, Hicks maintains that he kept contraband out of the house. The officers who conducted the search give varying reports and have inconsistent memories as to when, if at all, they might have seen such marijuana in the apartment. There are no photographs from the search or of the contraband in the record.

Prior to completion of the search, Ms. Dingle was herself arrested. Officers forced her to drive around the neighborhood with them for 30 minutes or an hour in pursuit of Mr. Hicks. Officers then took her to the precinct at approximately 9:00 AM, where she was held until about 3:00 PM. During that time, officers used Ms. Dingle's cell phone to contact Mr. Hicks, who was hiding at a friend's house, and tried to induce him to surrender in exchange for her release. Officers reportedly told Mr. Hicks that because he "did some bullshit" and ran from them, they "did some bullshit back to him" and took Ms. Dingle. Pl. 56.1 ¶ 18; Zenon Decl., Ex. 11 at 114. Ms. Dingle was issued a desk appearance ticket ("DAT") and released after several hours.

Later in the day, Mr. Hicks turned himself in at the precinct and was arrested for possession of marijuana that was found in his bedroom. He was also issued a DAT and released after two or three hours. The DATs for both Hicks and Dingle were for violation of New York Penal Law § 220.50(3), Criminally Using Drug Paraphernalia in the Second Degree, not for

possession of marijuana. When Dingle and Hicks appeared for their arraignment, they were informed that the District Attorney had declined to prosecute, and that all charges were dropped.

## DISCUSSION

The Court will grant summary judgement "where the facts and the law will reasonably support only one conclusion." O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 64 (2d Cir. 2002). Summary Judgement is appropriate if "the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (citation omitted); see also Fed. R. Civ. P. 56(a). In making this determination, the Court is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). "On a motion for summary judgment, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgement is sought." Dufort v. City of New York, 874 F.3d 338, 347 (2d Cir. 2017) (internal quotations omitted).

The primary issue in this case is plaintiffs' insistence that police planted marijuana during the search of Mr. Hicks' apartment. We first briefly discuss those claims for which summary judgment is granted.

The defendants' motion for summary judgement is granted as to the challenge to the search, the allegations of excessive force and state law assault and battery, the claims of improper conditions of confinement and deliberate indifference to medical needs, the claim of cruel and unusual punishment, the Monell claim, and the malicious prosecution claim. There is no evidence in the record to support: (a) a finding that the search warrant was invalid; (b) a

5

finding that officers used excessive or unreasonable force; (c) a finding of improper conditions, mistreatment, or cruelty during plaintiffs' limited period of confinement; (d) a finding of any nexus between lack of training and misconduct, or any specific custom or policy, for purposes of a Monell claim; (e) a finding that plaintiffs suffered a liberty deprivation sufficient for a malicious prosecution claim. There are no genuine issues of material fact to be tried as to these claims; summary judgement is granted.

Summary judgement is denied with respect to plaintiffs' fair trial, false arrest, and state negligence claims. Plaintiff's allegation that police planted marijuana, implicating a possible violation of the right to a fair trial through fabrication of evidence, is the focus of the majority of the remaining claims. Construing the evidence in the light most favorable to plaintiffs, material questions of fact persist as to whether officers planted marijuana in the apartment and used that to form the basis for the arrests. Mr. Hicks provides his own sworn testimony that there was no contraband in his room and offers sworn corroboration by Ms. Dingle[2] and Ms. Destin. Moreover, some of the investigating officers testify that they did not see marijuana during or after the search, and information on the DAT issued to Hicks and Dingle does not show a possession charge.

While defendants suggest that this Court should find Mr. Hicks' allegations of planted evidence self-serving and unsupported, such a credibility determination must be left for the jury. See Dufort v. City of New York, 874 F.3d 338, 350 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the

---

[2] Defendants point out that Ms. Dingle reported seeing Mr. Hicks with marijuana regularly in his apartment and that he smoked habitually. Ms. Dingle also reported that she did not see any marijuana on October 2, 2013. Construing the facts in the light most favorable to the plaintiffs, as we must at summary judgement, Ms. Dingle's sworn statement that she did not see marijuana that morning supports Mr. Hicks' insistence that any marijuana found was planted. It is the job of the jury to weigh Ms. Dingle's statements about when she did and did not see marijuana in Mr. Hicks' room, and evaluate her credibility. Lichterman Decl., Ex. F ("Dingle Dep.") at 56-60, 101.

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...[when] he is ruling on a motion for summary judgement...."). Regardless of how persuasive or well-supported this claim may be, that evaluation is the sole province of the jury.

With the exception of the negligence claim and the claim regarding Ms. Dingle's initial detention, which stand alone, the surviving claims in this bloated complaint all relate directly to plaintiffs' claim that the officers planted the contraband found in the apartment. The Court is not authorized, much less inclined, to accept the defendants' argument that Mr. Hicks be discredited and the claims be dismissed. With rare exception, credibility is a matter for the jury and the resolution for these claims must await their evaluation at trial.

Finally, we cannot consider qualified immunity at this summary judgment stage.[3] Mr. Hicks and Ms. Dingle have raised genuine disputes of material fact. These factual questions require resolution by a jury before the immunity defense is properly addressed.

---

[3] "It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." Harris v. City of New York, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) (quoting Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000)). Because "fabrication of evidence violate[s] a 'clearly established constitutional right,'" defendant "officers [are] not entitled to qualified immunity." Gomez v. City of New York, No. 16CV1274NGGLB, 2017 WL 1034690, at *8 (E.D.N.Y. Mar. 16, 2017).

## CONCLUSION

The defendants' motion for summary judgement is denied with respect to plaintiffs' fair trial, false arrest, and state negligence claims. The motion is granted on all remaining claims. Lt. Joseph Barone's entitlement to qualified immunity cannot be resolved prior to trial, given the many factual disputes that persist between the parties.

SO ORDERED.
Dated: Brooklyn, New York
     April 12, 2018

                                     s/ RJD
                                RAYMOND J. DEARIE
                                United States District Judge